IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* <br> JEAN N. MOORE, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> MERCY HEALTH SPRINGFIELD <br> COMMUNITIES f/k/a ST. JOHN'S <br> HEALTH SYSTEM, INC., <br><br> Defendant. | Case No. <br><br> *IN CAMERA* <br> AND UNDER SEAL |

## COMPLAINT

*Qui tam* Plaintiff-Relator Jean N. Moore, M.D. ("Plaintiff-Relator"), by and through her undersigned attorneys, on behalf of the United States of America and herself individually, alleges as follows in support of her Complaint against defendant Mercy Health Springfield Communities f/k/a St. John's Health System, Inc. based upon personal knowledge and relevant documents:

## NATURE OF ACTION

1. This is a *qui tam* action on behalf of the United States of America against defendant Mercy Health Springfield Communities f/k/a St. John's Health System, Inc. arising from Defendant's knowing violation of Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended.

1

## JURISDICTION AND VENUE

2. Jurisdiction exists pursuant to 31 U.S.C. § 3732(a), because this action seeks remedies on behalf of the United States for violations of 31 U.S.C. § 3729 *et seq.* by Defendant and Defendant can be found and transacts business in this District.

3. Venue is proper in the Western District of Missouri pursuant to 31 U.S.C. § 3732(a) because Defendant maintains its corporate headquarters here, can be found in and transacts or has transacted business in this district. In addition, statutory violations, as alleged herein, occurred in this district.

## PARTIES

4. The Government Plaintiff in this action is the United States of America. Pursuant to the provisions of 31 U.S.C. § 3730(b)(1), Plaintiff-Relator is suing in the name of and on behalf of the United States of America.

5. Jean N. Moore, M.D. ("Plaintiff-Relator") resides in Springfield, Missouri. Plaintiff-Relator is a medical doctor licensed in the State of Missouri and board certified in pediatrics. Plaintiff-Relator became employed by Mercy Clinic Springfield Communities f/k/a St. John's Clinic, Inc., St. John's Physicians and Clinics, Inc. and St. John's Health System, Inc. (the "Clinic") in 1999 as a pediatrician in Springfield, Missouri. Since that time, Plaintiff-Relator has maintained active staff privileges at the hospital owned and operated by Mercy Health Springfield Communities f/k/a St. John's Health System, Inc. (hereinafter referred to as "Mercy Health") located at 1235 E. Cherokee in Springfield, Missouri. During Plaintiff-Relator's employment, the Clinic has also employed numerous other physicians of various specialties.

6. Defendant Mercy Health Springfield Communities f/k/a St. John's Health System, Inc. (hereinafter referred to as "Mercy Health") is a Missouri non-profit corporation organized and existing under the laws of the state of Missouri and maintaining an office for the transaction of its usual and customary business in Greene County, Missouri. Defendant owns and operates a hospital located at 1235 E. Cherokee in Springfield, Missouri and is the recipient of federal funds from the Medicare and Medicaid programs.

7. The United States funds federal medical care reimbursement programs through the Department of Health and Human Services and regulated by the Center for Medicare and Medicaid Services.

### FILING UNDER SEAL

8. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint is filed *in camera* and will remain under seal and will not be served on the Defendant until the Court so orders. A copy of the Complaint and a written disclosure of substantially all material evidence and information in the possession of Plaintiff-Relator will be served on the United States pursuant to 31 U.S.C. § 3730(b)(2) and FED.R.CIV.P. 4(i). The written disclosure is incorporated herein by reference.

### FACTUAL BACKGROUND

9. On or about June 30, 1999, Plaintiff-Relator signed a Physician Employment Agreement with St. John's Health System, Inc. The Employment Agreement defined Plaintiff-Relator's compensation. Plaintiff-Relator's Employment Agreement includes a non-compete provision that provides that during Plaintiff-Relator's employment, she should not "divert or otherwise interfere with the patients ... of the Corporation [St. John's Health System, Inc.]."

10. In 1999, Plaintiff-Relator's employer, St. John's Health System, Inc. amended its articles of incorporation to indicate its new name as St. John's Physicians and Clinics, Inc. In

2005, St. John's Physicians and Clinics, Inc. amended its name to St. John's Clinic, Inc. In 2011, St. John's Clinic, Inc. became Mercy Clinic Springfield Communities (the "Clinic").

11. Upon information and belief, since sometime in 1999, Mercy Health Springfield Communities f/k/a St. John's Health System, Inc. ("Mercy Health") has been a separate entity from the Clinic entity described in paragraph 10, which employed Plaintiff-Relator. On information and belief, since sometime in 1999, Mercy Health has engaged primarily in the operation of a hospital located at 1235 E. Cherokee in Springfield, Missouri.

12. Upon information and belief, prior to 2010, Clinic-employed physicians who were specialists were "taxed" by the Clinic such that a portion of their profits were redistributed to primary care physicians such as Plaintiff-Relator who were also employed by the Clinic. This redistribution resulted in "PCP Value Payments" to Clinic primary care physicians of approximately $23,000 annually.

13. Upon information and belief, the Clinic specialist physicians became frustrated with the arrangement described in the foregoing paragraph because Clinic specialist physicians said it limited their ability to recruit and retain new specialist physicians. Therefore, the Clinic ceased the "tax" on specialists.

14. Upon information and belief, in fiscal year 2010, some Clinic physicians, including Plaintiff-Relator, began receiving payments from the Clinic that were designated as "Specialty Funding." Upon information and belief, Specialty Funding is not linked with productivity, but rather it is paid to some categories of Clinic employed physicians. Upon information and belief, physicians specializing in areas other than pediatrics also received "Specialty Funding."

15. Upon information and belief, said funding represents payments from the hospital system, Mercy Health Springfield Communities f/k/a St. John's Health System, Inc., to the Clinic.

16. Plaintiff-Relator and other Clinic-employed physicians routinely refer patients for procedures and hospitalization to the hospital owned and operated by Mercy Health.

17. Plaintiff-Relator received "Specialty Funding" payments from Mercy Health as part of her compensation in fiscal years 2010 and 2011. The Specialty Funding amount for pediatricians in 2011 was $39,000.00 paid to each pediatrician. Upon information and belief, at that time, the Clinic employed more than twenty pediatricians.

18. On or about April 30, 2012, the Clinic advised Plaintiff-Relator that Plaintiff-Relator's compensation for 2011 constituted unreasonable compensation because of the Clinic's status as a non-profit, 501(c)(3) tax-exempt organization under the Internal Revenue Code. Normal distributions were not timely made.

19. The Clinic then recalculated Plaintiff-Relator's compensation by taking into account Plaintiff-Relator's nurse practitioner's RVUs. After such a calculation, the Clinic advised Plaintiff-Relator that she no longer fell above the ninetieth percentile for compensation and therefore, it was no longer a problem for Plaintiff-Relator to receive Specialty Funding or other distributions.

20. On May 14, 2012, Plaintiff-Relator attended a meeting with Clinic administration, where Clinic administrators explained that there is a potential problem with the Clinic's compensation plan, especially in light of a recent court decision, *United States ex rel. Drakeford v. Tuomey Healthcare System Inc.*, 4th Cir., No. 10-1819, March 30, 2012. Clinic administrators

explained that the financial relationship, whereby approximately $40 million flows from Mercy Health to the Clinic, creates implications under the Stark Law for Mercy Health.

21. On or about May 31, 2012, the Clinic advised Plaintiff-Relator that the amount of fiscal year 2013 Specialty Funding for pediatricians increased to approximately $48,000.00.

## COUNT ONE

## FALSE CLAIM ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1395nn

22. Plaintiff-Relator adopts and incorporates by reference paragraphs 1 through 21 as though fully set forth herein.

23. Defendant Mercy Health's financial relationship with the Clinic whereby Mercy Health pays "Specialty Funding" to the Clinic does not meet the fair market and commercial reasonableness requirements of the financial relationship exception to the referral prohibition for designated health services under the provisions of The Ethics in Patient Referrals Act of 1989, 42 U.S.C. § 1395nn ("Stark Law"). Defendant knew that the compensation arrangement did not meet the fair market value and commercial reasonableness requirements of the Stark Law.

24. Referrals by the Clinic physicians to Defendant Mercy Health for designated health services, as defined in 42 U.S.C. § 1395nn(h)(6), were prohibited referrals under 42 U.S.C. § 1395nn(a)(1)(A).

25. Defendant Mercy Health knowingly and willfully violated the provisions of 42 U.S.C. § 1395nn(a)(1)(B) by presenting bills for designated health services furnished pursuant to referrals from the Clinic physicians, which were prohibited by the Stark Law.

26. Defendant Mercy Health knowingly and willfully submitted false claims to the government by certifying that all claims submitted were in compliance with all applicable

statutes and regulations when Defendant had been advised and was aware that submission of these claims was prohibited under the Stark Law.

27. The United States Government, unaware of the falsity of the claims and in reliance on the accuracy thereof, paid the claims for the prohibited referrals.

WHEREFORE, Plaintiff-Relator, on behalf of herself and the United States Government, requests the following relief:

28. Judgment against Defendant in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

29. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

30. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the government. The amount awarded to the Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

31. Such other relief as this Court deems just and appropriate.

## COUNT TWO

## FALSE CLAIMS ACT LIABILITY FOR VIOLATION OF 42 U.S.C. § 1320a-7b(b)(2)

32. Plaintif-Relator adopts and incorporates by reference paragraphs 1 through 31 as though fully set forth herein.

33. Defendant Mercy Health entered into a financial relationship with the Clinic through the payment of Specialty Funding in which the remuneration provided to Clinic physicians was not commercially reasonable and far exceeded the fair market value for the services provided. This excess compensation was paid to induce the Clinic physicians to refer patients to Defendant for services for which payment was made in whole or in part under a Federal healthcare program.

34. Defendant Mercy Health knowingly and willfully entered into the financial relationship, fully aware that it was not commercially reasonable and provided for compensation in excess of and exceeded the fair market value of the services provided, with the express intention of capturing all referrals for medical services made by the Clinic physicians.

35. Defendant Mercy Health knowingly and willfully violated the provisions of 42 U.S.C. § 1320a-7b(b)(2) ("The Anti-kickback Statute) by paying remuneration to induce referrals by the Clinic physicians to Mercy Health.

36. Defendant Mercy Health knowingly and willfully submitted false claims to the government by certifying that all claims for these prohibited referrals were submitted in compliance with the applicable statutes and regulations when Defendant had been advised and was aware that these claims arose out of illegal referrals under the provisions of The Anti-kickback Statute.

37. The United States Government, unaware of the illegality of the referrals, and in reliance of the accuracy of the representations and certifications of Defendant made in submissions of those claims, paid the claims for the illegal referrals.

WHEREFORE, Plaintiff-Relator, on behalf of herself and the United States Government, requests the following relief:

38. Judgment against Defendant in the amount of three (3) times the amount of damages the United States of America has sustained, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729 and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct and the costs of this action with interest;

39. That the Plaintiff-Relator be awarded all costs incurred, including reasonable attorneys' fees;

40. In the event the United States proceeds with this action, Plaintiff-Relator be awarded any appropriate amount for disclosing evidence or information that the United States did not possess when this action was disclosed to the government. The amount awarded to the Plaintiff-Relator should include the results of Government actions or settlement of claims resulting from the expansion of claims through the Government's further investigation directly generated from or attributable to Plaintiff-Relator's information; and

41. Such other relief as this Court deems just and appropriate.

>Respectfully Submitted,
>
>PLACZEK WINGET & PLACZEK
>
>By: /s/ Jenifer M. Placzek
>MATHEW W. PLACZEK
>Missouri Bar No. 24819
>mplaczek@pwplawfirm.com
>JENIFER M. PLACZEK
>Missouri Bar No. 57293
>jplaczek@pwplawfirm.com
>1722 S. Glenstone, Suite J
>Springfield, MO 65804
>Phone: 417-883-4000
>*Attorneys for Plaintiff-Relator.*

DATED: January 15, 2013